**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **JOE JOHNSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **Vs.** | § | **CIVIL NO. 23-cv-702-DKC** |
| | § | |
| **WESTLAKE SERVICES, LLC** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

Plaintiff, Joe Johnson, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and 28 U.S.C. §1447(c), submits this Memorandum of Law in Support of his Motion to Remand to State Court.

I.     **FACTS AND PROCEDURAL BACKGROUND**

Plaintiff filed this action against Defendant, Westlake Services LLC ("Westlake") in the District Court for Prince George's County, Maryland with a jury demand on August 15, 2022, alleging that Westlake had violated the Maryland Consumer Credit Reporting Agencies Act ("MCCRAA"), and invaded his privacy by obtaining his Equifax, TransUnion and/or Experian consumer credit reports without a permissible purpose and/or without his knowledge or consent, and as a result, he sustained actual damages in the form of a lower FICO credit score, including, financial and dignitary harm arising from injury to his credit rating and invasion of his privacy. Plaintiff claimed statutory, actual, non-specific amount of "punitive damages" for willful failure to comply with the MCCRAA, and attorneys' fees in the amount of $30,000. [**ECF No. 3**]. Westlake was served with the original complaint and summons on October 1, 2022, and on October 17, 2022, the Defendant filed a Notice of Intention to Defend. [**ECF No. 1, 1-3**].

On October 27, 2022, Westlake served the Plaintiff with a set of interrogatories for purpose of discovery. [**ECF Nos**. **1, 1-14, 1-19**]. On January 11, 2023, pursuant to the Plaintiff's jury demand, the case was transferred to the Circuit Court for Prince George's County, Maryland ("Circuit Court"), [**ECF No**. **1, 1-22**], and on January 19, 2023, the Circuit Court issued a Scheduling Order setting the jury trial to begin on January 16, 2024. [**ECF No**. **1, 1-29**]. On January 30, 2023, Plaintiff filed and served Westlake with a First Amended Complaint ("FAC"), again, claiming statutory, actual, "punitive damages" for willful failure to comply with the MCCRAA, and attorneys' fees in an amount to be determined at trial. [**ECF No**. **4**]. Westlake filed a Motion to Dismiss the FAC on February 13, 2023. [**ECF No**. **5**]. In moving to Dismiss, Westlake acknowledged that the original complaint sought $30,000 in damages; however, it ignored the fact that, like the FAC, the original complaint also demanded "punitive damages" in an unspecified amount for willful failure to comply with the MCCRAA. *Id*. Westlake never attempted to remove the original nor FAC to federal court, even though they both sought $30,000 plus an unspecified amount in "punitive damages". Plaintiff then filed a Second Amended Complaint ("SAC") on February 27, 2023, simultaneously with an opposition to Defendant's motion to dismiss. [**ECF Nos**. **6, 7**]. Like the original and FAC, the SAC sought $30,000 plus an unspecified amount in "punitive damages". *Id*. On March 13, 2023, Plaintiff served the Defendant with discovery. [**ECF No. 1, 1-26**]. The following day, on March 14, 2023, Westlake purportedly removed the action to the federal court on the sole basis of federal diversity removal jurisdiction. [**ECF No. 1**]. As discussed more fully below, the notice of removal was untimely filed, Westlake waived the right to removal and its removal notice is defective and, this Court otherwise lacks federal diversity removal jurisdiction over this action and it must therefore be remanded to the State Court.

II.   **PROPRIETY OF REMOVAL**

A. Standard of Review

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), and must presume that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper. *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Thus, a civil action filed in state court may be removed to federal district court if it is one over which the district court has original jurisdiction. 28 U.S.C. § 1441(a). Moreover, the burden of demonstrating federal removal jurisdiction and the propriety of removal always rests with the party seeking removal. *See, McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). Therefore, "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate it in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Courts are required to construe removal statutes narrowly. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). This is because "the removal of cases from state to federal court raises significant federalism concerns." *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011), *abrogated in part on other grounds by* the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011); *see also Cohn v. Charles*, 857 F.Supp.2d 544, 547 (D. Md. 2012) ("Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court.").

III.   **LEGAL ARGUMENT**

1.     **Defendant Westlake's Removal Notice is Untimely.**

Section 1446(b) of Title 28 of the United States Code provides:

The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. 28 U.S.C. §1446(b).

Untimely removal constitutes a defect in the removal procedures, *Cades v. H & R. Block, Inc.*, 43 F.3d 869, 873 (4th Cir. 1994), and renders a case improperly removed. *Huffman v. Saul Holdings Ltd Partnership*, 194 F.3d 1072, 1076 (10th Cir. 1999). "The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress. [A federal court, therefore] look[s] to federal law to determine whether the elements of removal jurisdiction have been established under the statutes ....". *Link Telecomm. Inc. v. Sapperstein, et al.*, 119 F.Supp.2d 536, 540 (D. Md. 2000). Although 28 U.S.C. §1441, in general, provides a defendant with a right to remove an action from state to federal court, the procedures for removal are set forth in §1446. Under the first paragraph of §1446, a Notice of Removal must be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. §1446(b).

The second paragraph of §1446(b) provides, however, that "*if the case stated by the initial pleading is not removable*, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable ...". (emphasis added).

Here, the removal of this State Court action was untimely in that Westlake plainly had notice on October 1, 2022 that this matter was initially removable and failed to seek removal within thirty days of this notice. Specifically, Westlake purports to remove this action based on Diversity Jurisdiction under 28 U.S.C. §1332(a), [**ECF No. 1**], and alleges in its removal papers, that "[o]n February 27, 2023, Plaintiff filed a Second Amended Complaint, which added six new causes of action. Additionally, Plaintiff specified for the first time in his Second Amended Complaint that he is seeking compensatory damages in the amount of $30,000, plus "punitive damages in an amount to be determined at trial." *Notice*, at ¶3. Westlake then contends that "removal of this action to this Court is timely because it has occurred within thirty days of Plaintiff filing his Second Amended Complaint, the pleading that incorporates the changes giving rise to the removability of the action." *Id*. at 4. The removal notice however was untimely.

*First*, all of the Plaintiff's claims rely solely on state law. The Court did not have original jurisdiction over the claims and Plaintiff could not have originally filed the claims in this Court; however, to the extent that diversity jurisdiction is a proper basis for invoking federal removal jurisdiction, (*which it is not*); the original complaint, like the First and Second Amended Complaints sought compensatory damages in the amount of $30,000, plus "punitive damages" in an unspecified amount. Thus, if the SAC was removable when it alleged "punitive damages", then the initial complaint was removable as it also demanded $30,000, plus "punitive damages". The summons and original complaint were served on Westlake on October 1, 2022, and the "defendant's time to remove is triggered by simultaneous service of the summons and complaint," *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999); Westlake thus had until October 31, 2022 to timely remove this action but it failed to do so, which renders removal of this State Court Action untimely under §1446 and requires remand.

Westlake attempts to avoid this outcome by alleging in its removal papers that at the time Plaintiff filed his initial complaint, this action was not removable because "there was not complete diversity amongst the parties at the time of filing." *Notice*, at p. 1, n.1. Diversity jurisdiction requires "complete diversity" of citizenship between the plaintiff(s) and defendant(s). That is, no plaintiff may be a citizen of the same state as any defendant. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *see also,* 28 U.S.C. §1332. The presence "of a single plaintiff from the same State as a single defendant deprives the district court" of jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Here, Plaintiff's initial complaint was brought against the following named defendants: (1) AmeriCredit Financial Services, a Delaware company with its principal place of business in Fort Worth, Texas; (2) Flagship Credit Acceptance, LLC, a Delaware company with its principal place of business in Wilmington, Delaware; (3) North State Acceptance, a North Carolina company with its principal place of business in Raleigh, North Carolina; (4) Global Lending Services, LLC, a Delaware company with its principal place of business in Dover, Delaware; (5) Wells Fargo Bank, N.A. with its principal place of business in Sioux Falls, South Dakota, as well as (6) Westlake Services, LLC, a California Limited Liability Company. *Notice*, at p. 1, n.1.

Westlake claims in its removal papers that diversity exists as to the SAC because "Plaintiff states in his Second Amended Complaint that he was "at all relevant times residing in Fort Washington, Maryland."" *Id*. at ¶9. However, like the SAC, Plaintiff's initial complaint filed against the Defendant also alleged that he "[was] an individual who was at all relevant times residing in Fort Washington, Maryland". [**ECF No**. **3**, at ¶2]. Thus, to the extent his Maryland *residency* equates to *citizenship* for diversity jurisdiction purposes, (*which it does not*); Plaintiff was not in the same state as any of the defendants named in the initial complaint.

Thus, even if Westlake were to prove that Plaintiff is a Maryland citizen, then there was "complete diversity" amongst the parties at the time of filing the initial complaint. Plaintiff's initial pleading filed on August 15, 2022, and served on the Defendant on October 1, 2022, sufficiently provided information for Westlake to intelligently ascertain removability; however, it chose not to remove the initial complaint to federal court when it had the opportunity to do so.

Federal courts have yet to adopt a uniform approach to ascertain when "the case stated by the initial pleading is not removable." The Fourth Circuit has stated that it "will not require courts to inquire into the subjective knowledge of the defendant," but instead, district courts are permitted to "rely on the face of the *initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal*, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) (emphasis added).

In *Link*, this Court examined the issue of how and when a defendant should know that an action is removable. The *Link* Court, following the approach of the "vast majority of cases" that have considered this question, stated:

> There appears to be a line of support for placing on the defendant desiring removal the burden of scrutinizing the plaintiff's initial pleading, even if it is indeterminate on its face, and of removing within 30 days, at least unless the initial pleading provides "no clue" that the case is actually removable.

119 F. Supp.2d at 541 (citing *Kaneshiro v. North America Company for Life and Health Insurance*, 496 F. Supp. 452 (D. Haw. 1980); *see also, Kuhn v. Brunswick Corporation*, 871 F. Supp. 1444, 1446 (N.D. Ga. 1994) (holding that defendant could have intelligently ascertained removability from the face of the initial pleading); *Brooklyn Hosp. Ctr. v. Diversified Inf. Tech., Inc.*, 133 F. Supp.2d 197, 203 (E.D. N.Y. 2001) (same).

Westlake claims that removal of this action to this Court is timely because it has occurred within thirty days of Plaintiff filing his *SAC*, the pleading that it claims incorporates the changes giving rise to the removability of the action *Notice*, at ¶4. This argument is unavailing and offers no support whatsoever to the timeliness of the removal notice. It is clear that the Defendant was aware of sufficient information to ascertain removability on October 1, 2022, yet failed to file a timely Notice of Removal within thirty days of that notice.

A copy of the Plaintiff's initial complaint was served on Westlake on October 1, 2022, and like the *SAC* that it now relies for removal of this action, Plaintiff sought damages in the amount of $30,000 plus "non-specific" amount of "punitive damages". [**ECF No**. **3**]. Thus, under Westlake's theory for removal of the SAC, the face of the initial complaint, like the SAC, alleged damages that, if Plaintiff is successful, would exceed $75,000, and the amount in controversy requirement under 28 U.S.C. §1332(a) met.

Furthermore, to the extent that his Maryland "residency" can somehow equate to his "citizenship" for purposes of diversity removal jurisdiction, (*which it does not*); however, Plaintiff was not in the same state as any of the defendants named in the initial complaint. Thus, there was also "complete diversity" amongst the parties. As such, the initial pleading confirms that Westlake had a "clue" that diversity jurisdiction existed as early as October 1, 2022 when it was served with the summons and initial complaint, but it failed to file a Notice of Removal until March 14, 2023, five months too late. Thus, the Defendant plainly did not comply with the thirty-day requirement under §1446(b). The SAC filed on February 27, 2023, "did little more than reconfirm other information which had already been received by [Defendant] with reference to the nature of" the complaint. 119 F.Supp.2d at 544. Westlake's reliance on the SAC as a basis for removal is merely an attempt to cure their earlier neglect to remove in a timely fashion.

a.   **Defendant Westlake Waived the Right to Removal by Taking Substantial Defensive Action in the State Court Prior to filing a Notice of Removal.**

Notwithstanding the untimeliness of the Defendant's notice of removal; even assuming, *arguendo*, that the removal notice was timely filed, (*which it was not*); however, Westlake nevertheless waived its right to removal by taking substantial defensive action in state court.

It has long been held in this Circuit that where a defendant first files a motion to dismiss in state court, the defendant waives his right to later remove to federal court. *Aqualon Company v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4ᵗʰ Cir. 1998) ("A defendant may waive the right to remove by taking some such substantial defensive action in the state court before petitioning for removal"). "Waiver determination involves a factual and objective inquiry as to the defendant's intent to waive." *Grubb v. Donegal Mutual Insurance Company,* 935 F.2d 57, 59 (4ᵗʰ Cir. 1991) (quoting *Rothner v. City of Chicago,* 879 F.2d 1402, 1408 (7ᵗʰ Cir. 1989). The Fourth Circuit has found that "a defendant may yet waive its 30-day right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court." *Grubb*, 935 F.2d at 57 (quoting *Rothner*, 879 F.2d at 1416). Waiver of this right is appropriate "in extreme situations, when judicial economy, fairness, and comity demand it." *Northrop Grumman v. Dyncorp Int'l. LLC,* 865 F.3d 181, 186 (4ᵗʰ Cir. 2017) (internal quotations omitted). In past cases, the Fourth Circuit have looked to see whether a defendant has taken substantial defensive action in state court before petitioning for removal. *See, Aqualon Co.*, 149 F.3d at 264; *see also, Northrop Grumman*, 865 F.3d at 188.

In this case, Westlake took several actions which expressed the requisite intent to remain in state court. *First*, it filed a notice of intention to defend immediately after being served with Plaintiff's initial complaint in this action on October 1, 2022, [**ECF No**. **1-3**], it then served discovery, [**ECF No**s. 1-14, 1-19], and subsequently it filed a dispositive motion to dismiss in which it raised substantive arguments before the state court. [**ECF No**. **1-30**].

Under Maryland law, a ruling on a motion to dismiss amounts to an adjudication on the merits. *See, Annapolis Urban Renewal Authority v. Interlink, Inc.*, 43 Md. App. 286 (1979). Westlake thus opened itself up to a complete merit's determination in state court. Further, the Defendant filed this motion a full four months *after* receiving notice on October 1, 2022 that the case was removable. Instead of proceeding straight to federal court, Westlake decided to avail itself of state court. These actions plainly show that Westlake "actively engage[d] in defensive litigation in the state court[.]" *Northrop Grumman*, 865 F.3d at 188. As for the "extreme situations" determination, "judicial economy clearly weighs in favor of this case being decided by the court in which it originated and was already, partially litigated." Westlake waited more than five months before removing this case, and it only did so one day after Plaintiff had amended the complaint a second time, served discovery and opposed its motion, even though the initial complaint was removable under the same theory as it now seek removal of the SAC. Westlake cannot "be allowed to test the waters in state court ... and finding the temperature not to its liking, beat a swift retreat to federal court." *Northrop Grumman*, 865 F.3d at 188 (quoting *Estate of Krasnow v. Texaco, Inc.*, 773 F. Supp. 806, 809 (E.D. Va. 1991)). As Judge Conway of the Middle District of Florida put it in *Kam Hon, Inc. v. Cigna Fire Underwriters Insurance Co.*, 933 F. Supp. 1060, 1063 (1996), the defendant should not "dilly-dally" in state court while it decides whether it wants to proceed in federal court. That is exactly what the Defendant did here.

Westlake sought to use the state court proceedings to its advantage several times over, and only changed its mind once it became apparent from the Plaintiff's opposition that it would result in the denial of its motion to dismiss. It then removed the action in hopes of obtaining a favorable ruling from this court on its motion. [**ECF No. 10**]. Thus, under these circumstances, Westlake waived its right to removal, and this case should be remanded to the State Court.

2.    **Defendant Westlake Has Failed to Meet its Burden in Establishing the Existence of Federal Diversity Removal Jurisdiction.**

Even assuming, *arguendo*, that the notice of removal was filed timely, (*which it was not*), and the Defendant did not waive the right to removal; Westlake has nevertheless failed to meet its burden in establishing the existence of federal diversity removal jurisdiction.

Specifically, Defendant removed this action from the Circuit Court based solely on diversity jurisdiction under 28 U.S.C. §1332(a). *Notice*, at p. 1, ¶¶7-17. District Courts have jurisdiction under section 1332 over all civil actions only where there is complete diversity of citizenship between the parties and the amount-in-controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. §§1332(a) and 1446(c). When diversity jurisdiction exists, a defendant may remove an action from state to federal court by filing a notice of removal. However, federal district courts are of limited jurisdiction. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Therefore, a federal district court must presume that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper. *Poole*, 531 F.3d at 274 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. at 377 (1994)).

a.    **Defendant Westlake Fails to Establish Complete Diversity of Citizenship.**

Westlake alleges in its removal papers that Plaintiff states in his Second Amended Complaint that he was "at all relevant times residing in Fort Washington, Maryland", that Westlake is a corporation organized under the laws of California, with its principal place of business in Los Angeles, California, and that for purposes of federal jurisdiction, Westlake is a citizen of the State of California and there is complete diversity of citizenship between Plaintiff and Westlake. *Notice*, at ¶¶9-11. Defendant Westlake's Notice of Removal, however, is fatally defective in at least three respects and it fails to invoke federal diversity removal jurisdiction.

*First*, defendant asserts that this court has jurisdiction over this State Court Action because the controversy is one between citizens of different states. *See,* 28 U.S.C. §1332(a)(1). The burden of showing that removal was proper is always upon the party removing. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921). Westlake cannot meet that burden. Neither the original nor the amended complaints filed in state court specifies the *citizenship* of the Plaintiff as of the time of filing the complaint in state court. Indeed, a cursory read of the complaints reveals that this case lacks complete diversity because it alleges that Plaintiff was "*residing* in Fort Washington, Maryland" and lists a post office box address in Maryland that Westlake also provided in its removal papers, but section 1332(a)(1) demands diverse *citizenship*, not diverse *residency. Kessler v. Home Life Insurance Co.*, 965 F. Supp. 11, 12 (D. Md. 1997) ("Ordinarily, the existence of subject matter jurisdiction based on diversity of citizenship is determined ... on the face of [] the complaint."). As the Supreme Court has consistently held, state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State."). The existence of citizenship cannot be inferred from allegations of mere residence, standing alone. *Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399 (1925) ("The bill alleges that … appellee [is] a 'resident' of Michigan. This is not sufficient allegation of appellee's Michigan citizenship."); *Shaw v. Quincy Mining Co.*, 145 U.S. 444, 447 (1982) ("It was held by this court from the beginning that an averment that a party resided within the State or the district in which the suit was brought was not sufficient to support the [diversity] jurisdiction, because in the common use of words a resident might not be a citizen, and therefore, it was not stated expressly and beyond ambiguity

that he was a citizen of the State … The same rule has been maintained to the present day …"); *Robertson v. Cease*, 97 U.S. 646, 648 (1978) ("Looking, then, at the pleadings, and to such portions of the transcript as properly constitute the record, we find nothing beyond the naked averment of Cease's residence in Illinois, which, according to the uniform course of decision in this court, is insufficient to show his citizenship in that State. Citizenship and residence, as often declared by this court, are not synonymous terms.").

Here, the allegation that the Plaintiff was "residing in Fort Washington, Maryland" is not *prima facie* proof of his citizenship for diversity purposes. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998) (declining to accept conclusory allegations of residence as *prima facie* proof of citizenship for diversity purposes and collecting cases on similar points.). Westlake makes no factual allegations in its removal papers as to the Plaintiff's "*citizenship*", and it cannot rely on conclusory allegations of the Plaintiff's "*residency*" as *prima facie* proof of his "*citizenship*". *See, Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) (stating that "[f]or purposes of diversity jurisdiction, residency is not sufficient to establish citizenship."). Moreover, nor can the Defendant rely on the listing of the post office box to establish that Plaintiff is a citizen of that state. *Martinez v. Martinez,* 62 F. App'x 309, 313-14 (10th Cir. 2003) (asserting that plaintiff's listing a post-office box as his address was insufficient to establish a foundation for diversity jurisdiction over her state-law claims). Simply put, allegations that the Plaintiff was "*residing*" in Maryland is not sufficient to support jurisdiction or prove *citizenship* required by 28 U.S.C. §1332(c), and in the absence of any facts in the record as to Plaintiff's "citizenship" upon which federal diversity removal jurisdiction can rest, this Court plainly lacks subject-matter jurisdiction and this case must therefore be remanded to the State Court from where it was improperly removed.

*Second*, notwithstanding the fact that it failed to allege his "citizenship"; however, Westlake has also failed to allege the Plaintiff's citizenship "at the time of filing of the suit in state court" *and* "at the time of removal of this action". It is well settled law that a removing party must allege diversity ***both*** at the time of filing of the suit in state court ***and*** at the time of removal. (emphasis). *Stevens v. Nichols,* 130 U.S. 230, 9 S. Ct. 518 (1889); *See also*, *Cox-Stewart v. Best Buy Stores, L. P.*, 295 F. Supp.2d 566, 567 (D. Md. 2005) (citing *Higgins v. E.I DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4ᵗʰ Cir. 1988)).

Defendant alleges in its removal papers only that "Plaintiff states in his Second Amended Complaint that he was "at all relevant times residing in Fort Washington, Maryland"; however, conspicuously missing from its removal papers are any factual allegations that the Plaintiff is a "citizen" of Maryland or that he was a "citizen" of that state ***both*** "at the time of filing of the suit in state court" ***and*** "at the time of removal of this action". *See Notice*, at ¶9. These entirely missing jurisdictional allegations are fatal to diversity removal jurisdiction. *Crehore v. Ohio and Mississippi Railroad Co.*, 131 U.S. 240 (1889). The allegations in the removal papers falls far short of alleging diversity of citizenship both "at the time of filing of the suit in state court" and "at the time of removal" as required. *Rowland v Patterson*, 882 F.2d 97, 99 (4ᵗʰ Cir. 1989). Westlake's removal notice does not allege anything in this respect, but alleges only that Plaintiff states in his SAC that he was "at all relevant times residing in Fort Washington, Maryland." Without any allegation as to Plaintiff's citizenship "at the time of filing of the suit in state court" and "at the time of removal" of this action, [1] the jurisdiction of the Circuit Court was never divested and this case must therefore be remanded as the diversity statue is not satisfied.

---

[1] As noted above, Westlake represented to the court in its notice that "there was *not* complete diversity amongst the parties *at the time of filing*." (Emphasis added) *See*, [**ECF No**. **1**, n.1]. This case was thus not removable since the defendant concedes diversity did not exist at the time of filing. Judicial estoppel should moreover bar it from taking any other position. *Lowery v. Stovall*, 92 F.3d 219, 224 (4ᵗʰ Cir. 1996).

*Finally*, with respect to its citizenship; Westlake incorrectly allege that it is a *corporation* organized under the laws of California, with its principal place of business in Los Angeles, California. *Notice*, at ¶10. The Defendant is, instead, a *Limited Liability Company*, and as such, was required to allege in its removal papers the citizenship of all its members for purposes of establishing diversity removal jurisdiction. *Cent. W. Va. Energy Co. v. Mountain State Carbon*, 636 F.3d 101, 103 (4th Cir. 2011); *see also*, *Hertz Corporation v. Friend*, 559 U.S. 77, 80 (2010). The citizenship of a limited liability company "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Company*, 542 F.3d 1077, 1080 (5th Cir. 2008). A limited liability company is a citizen of any state of which a member of the company is a citizen. *Rolling Greens MHP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1021-22 (11th Cir. 2004); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *see also*, *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985).

Westlake's removal papers contain no allegations as to the citizenship of its members, which is fatal to diversity jurisdiction because a defendant removing an action to federal court under 28 U.S.C. §1332 is required to allege the citizenship of all members of an LLC. *Amerigold Logistics, LLC v. ConAgra Foods, Inc*., 136 S. Ct. 1012, 1016–17 (2016) (explaining that for purposes of diversity jurisdiction, a trust as an unincorporated entity "possesses the citizenship of all of its members"). Further, as noted above, a removing party must allege also that diversity existed both at the time of filing of the suit in state court and at the time of removal. *Best Buy Stores, L. P.*, 295 F. Supp.2d at 567. The removal notice filed by the Defendant in this case on March 14, 2023, did not comply with the removal statute and, as discussed above, the jurisdiction of the Circuit Court was never divested.

Simply put, to sufficiently allege the citizenship of a limited liability company, Westlake was required but failed to allege the state of citizenship of each member of the Defendant at the time the suit was filed in state court and at the time of removal prior to concluding that there was "complete diversity" of citizenship between the parties. The record sets forth neither the names nor the citizenship of any of its members, nor does it show their citizenship at the time of filing this action in state court or at the time of removal, [2] and having failed to make such jurisdictional allegations is fatal to diversity removal jurisdiction. This action must thus be remanded to the State Court. *Estate of Fitzpatrick v. Brehm*, 580 F. Supp. 731, 734 (W.D. Ark. 1984) (remanding action and finding defendant's allegations were defective because the removal petition failed to state that diversity existed at the time of the filing of the suit and at the time of removal); *Kellam v. Keith*, 144 U.S. 568 (1892) (ordering remand and holding it must affirmatively appear from the removal petition, or elsewhere in the record that diversity existed at the commencement of suit, not merely at the time of removal); *Hubbard v. Tripp*, 611 F. Supp. 895 (E.D.Va. 1985) (holding that failure to specify defendant's and plaintiff's citizenship at the time of filing the complaint is fatal and defendant may not now supply the missing allegations.); *see also*, *Tincher v. Ins. Co. of State of Pennsylvania,* 268 F.Supp.2d 666, 667 (E.D.Va.2003) (same).

b.     **Neither Plaintiff's Original, First nor Second Amended Complaints Meet the Statutory Jurisdictional Minimum Amount in Controversy Requirement.**

Finally, even if the Court were to conclude that the notice of removal that Westlake filed on March 14, 2023 was timely (*which it was not*), that it did not waive the right to remove and has established the existence of diverse "citizenship" between the parties (*which it has not*); however, federal diversity removal jurisdiction would still be improper because the statutory amount in controversy requirement is less than the $75,000 jurisdictional minimum.

---

[2] *See*, *Id*., **Footnote** 1, *supra.*

A removed case must be remanded if, at any time before final judgment, it appears that the district court lacks subject-matter jurisdiction. *See,* 28 U.S.C. §1447(c). The district courts have subject-matter jurisdiction in a removed state court action based on diversity of citizenship so long as the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §1332. This provision "must be narrowly construed so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control." *Packard v. Provident National Bank*, 994 F.2d 1039, 1044-45 (3rd Cir. 1993), *cert. denied sub nom. Upp v. Mellon Bank, N.A.*, 510 U.S. 964 (1993).

Here, the minimum amount in controversy requirement is not met. 28 U.S.C. §1446(c)(2) states that, "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the *initial* pleading *shall* be deemed to be the amount in controversy." (Emphasis added). The only exception is that if the initial pleading seeks, "(i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." Defendant, as the removing party, bears the burden of proving that the amount in controversy exceeds the $75,000 jurisdictional amount under section 1332(a). That burden, however, has not been met here. Rule 2-305 of the Maryland Rules of Civil Procedure states that, "a demand for a money judgment that *does not* exceed $75,000 shall include the amount of damages sought." However, "If the amount sought *exceeds* $75,000, a general statement to that effect is necessary in order to determine if the case may be removed to a federal court based on diversity of citizenship." (Emphasis added). Thus, a specific dollar amount less than or equal to $75,000 is relevant to determining whether the amount is sufficient for circuit court jurisdiction or a jury trial. *Hoang v. Hewitt Ave. Assoc.*, 177 Md. App. 562 (Md. App. 2007).

Here, the *initial* complaint in the *ad damnum* clause claimed statutory, actual, and "punitive damages" for the Defendant's willful failure to comply with the MCCRAA, and attorneys' fees in the amount of $30,000. [**ECF No. 3**]. Following the transfer of this action to the Circuit Court, Plaintiff subsequently filed a SAC that mirrored the *ad damnum* clause in the *initial* complaint, and pursuant to Rule 2-305, included the amount of damages sought "on all of his claims in this action in the amount of $30,000, as and for compensatory, general, special and statutory damages", and an unspecified amount of "punitive damages". *See,* [**ECF No. 7**]. Thus, like the specific amount sought in the *initial* complaint, the SAC does not exceed nor come anywhere near $75,000. There was thus never original federal jurisdiction in this case.

In an apparent effort to give life to its ability to remove this action, Westlake rely on the unspecified amount of punitive damages alleged in the SAC and contends in its notice of removal that if Plaintiff "were to prevail on his intentional infliction of emotional distress claim, as an example, Plaintiff could be entitled [sic] recover punitive damages, which could easily increase his recovery above the $75,000 jurisdictional threshold." *Notice*, ¶16.

The Fourth Circuit has not determined the exact standard to be applied in ascertaining the amount in controversy in federal diversity cases. *See, e.g.*, *Momin v. Maggiemoo's Int'l, L.L.C.*, 205 F. Supp. 2d 506, 509 n.2 (D. Md. 2002). However, this Court has reasoned that:

> [i]n determining whether an amount in controversy is sufficient to confer jurisdiction, courts apply one of two legal standards depending on whether the damages are specified or unspecified in the complaint. Where a plaintiff claims a specific amount in damages that is less than $75,000, removal is proper only if the defendant can prove to a legal certainty that the plaintiff would actually recover more than that if she prevailed. If, on the other hand, a plaintiff's complaint does not allege a specific amount in damages, a defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.

*Momin*, 205 F. Supp. 2d at 509-10 (internal citations omitted).

Here, the plaintiff limited the damages "on all of his claims in this action in the amount of $30,000, as and for compensatory, general, special and statutory damages," plus an unspecified amount in punitive damages. This amount is clearly below the statutory jurisdictional minimum. Since the plaintiff has plainly limited the amount of damages to $30,000, the burden is on the Defendant to show a *legal certainty* that the Plaintiff's claims exceed the statutory jurisdictional minimum under 28 U.S.C. §1332(a). Defendant cannot meet nor has it met its burden.

Although plaintiff requested an unspecified amount in punitive damages; however, Defendant does nothing more than allege that the Plaintiff "*could*" be entitled to recover punitive damages, which "*could*" increase his recovery above the $75,000 jurisdictional threshold. This falls far short of the high burden of *legal certainty*". Westlake's notice of removal, particularly with respect to "punitive damages", do not establish any *specific* amount in punitive damages that it believes Plaintiff may possibly recover in this action, if he could recover it at all. Instead, Defendant merely makes the speculative allegations in its removal papers that the amount *could* exceed the jurisdictional minimum without offering *any* evidence whatsoever to support it.

A speculative argument regarding the potential value of the award is insufficient to meet its burden of proving the amount in controversy exceeds the $75,000 jurisdictional minimum. *Delph v. Allstate Home Marty.,* 478 F.Supp.2d 852, 855 (D. Md.2007) (finding that defendant's "speculation that the amount could exceed the jurisdictional minimum" fails to prove this fact by a preponderance of the evidence) (citing *Conrad Associates v. Hartford Accident & Indemnity Company.,* 994 F. Supp. 1196, 1198 (D. Cal. 1998). Moreover, even if the Defendant were to establish a *specific* amount in punitive damages that it believes Plaintiff *could* recover; under Maryland law, to recover punitive damages a party must prove *actual malice*. *Darcars Motors of Silver Spring, Inc. v. Borzym*, 150 Md. App. 18, 43-53 (2003), *aff'd.*, 379 Md. 249 (2004).

Further, even if "actual malice" is proven, "[A] plaintiff has no right or entitlement to punitive damages under Maryland law. '[T]he trier of fact has discretion to deny punitive damages even where the record otherwise would support their award.'" *Bowden v. Caldor, Inc.*, 350 Md. 4, 25 (1998) (quoting *Adams v. Coates*, 331 Md. 1, 15 (1993)). Defendant contends that if the Plaintiff were to prevail on his intentional infliction of emotional distress (IIED) claim that he could be entitled to recover punitive damages. *Notice*, at ¶16. Defendant is wrong for at least three reasons. *First*, "actual malice" is not an element of any of the claims. *Second*, Maryland courts have explicitly held that "actual malice" does not elevate wrongful conduct to an "extreme and outrageous" level to permit recovery of punitive damages for an IIED claim. *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59, *cert. denied*, 306 Md. 118 (1986). And *third*, Plaintiff has no right to recover punitive damages under Maryland law. *Bowden*, 350 Md. at 25.

In any event, while Fed. R. Evid. 408 prohibit the admission of a settlement offer to prove or disprove the amount of a disputed claim, however, the Court may still consider this evidence in determining the amount in controversy. *See, White v. State Farm Mut. Auto. Ins. Co.*, 2012 WL13102525, at *2 (M.D. Fla. May 16, 2012) (considering demand letter as evidence of the amount in controversy because "Rule 408 does not 'either expressly or implicitly disallow the use of [a settlement or demand letter] to determine the amount in controversy for purposes of determining federal jurisdiction.'"); *see also*, *Stratmann v. State Farm Mut. Auto. Insurance Co.*, 2015 WL12861146, at *1 (M.D. Fla. July 28, 2015) (permitting consideration of demand letter in determining amount in controversy) (citation omitted); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000) (holding demand letter constituted an "other paper" for ascertaining amount in controversy); *Rahwar v. Nootz*, 863 F. Supp. 191, 192 (D.N.J. 1994); *Williams v. Safeco Ins. Co.*, 74 F. Supp.2d 925, 929 (W.D. Mo. 1999).

Here, prior to removal, Plaintiff and Westlake engaged in settlement discussions and on October 25, 2022, Plaintiff sent defense counsel a demand letter in the amount of $1,000 but Westlake rejected it and, instead, in an email, dated November 28, 2022, offered to pay $100. Plaintiff rejected the Defendant's offer and confirmed that his position was that he would not "accept anything less than $1,000 to resolve this matter." A true and accurate copy of the email is attached hereto as **Exhibit A**. It is thus crystal clear that the amount in controversy at the time this action was filed and at the time the defendant removed it, was not anywhere near $75,000.

Accordingly, in light of the defendant's clear failure to prove the amount in controversy exceeds $75,000 under either the "legal certainty" or "preponderance of the evidence" standard, coupled with this Court's charge to remand the case whenever federal jurisdiction is doubtful, the Court must grant the Plaintiff's motion and remand this removed action to the State Court, and as discussed below, require that the Defendant pay just costs and any actual expenses, including, any attorney fees incurred, as a result of the removal and having to seek this remand.

3.    **The Court Should Require Payment of Just Costs and Any Actual Expenses**.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. §1447(c); *see also Martin v. Franklin Capital Corp.,* 546 U.S. 132, 140 (2005) ("The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand  reduces the attractiveness of removal as a method for delaying litigation and imposing costs on [the other party]."). Moreover, "absent unusual circumstances, [however,] attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin,* 546 U.S. at 136. Nevertheless, "[b]ad faith is not required; fees may be

awarded even if removal is sought in subjective good faith." *Amer. Cap. Adv. LLC v. Gordon,* No. RWT 10cv2113, 2010 WL 5055810, at *2 (D. Md. Dec. 3, 2010) (quoting *Miller v. Baker,* No. 5:09-cv-00094, 2010 WL 3585423, at *1 (W.D. Va. Sept. 9, 2010)); *see also*, *Hyatt v. Johns,* No. GJH-16-2912, 2016 WL 8673870, at *3 (D. Md. Oct. 14, 2016).

Here, Westlake lacked an objectively reasonable basis for seeking removal. First, the filing of the removal was untimely. Defendant was served with the original complaint and summons on October 1, 2022; thus, under 28 U.S.C. §1446, it had until October 31, 2022 to remove this action but it failed to do so. Westlake therefore had no "subjective good faith" basis for which to remove this action to federal court on March 14, 2023. Moreover, while Westlake claimed that the Court had diversity removal jurisdiction; however, the initial, FAC, and SAC, plainly alleged no more than $30,000 in damages, which was far less than the $75,000 amount required to invoke federal diversity removal jurisdiction. More importantly, by its very own admission, there was *not* complete diversity amongst the parties *at the time of filing,* which is a prerequisite to removal. Defendant thus also lacked a reasonable legal argument in support of jurisdiction that would justify denial of the Plaintiff's request for cost and attorney's fees here.

Simply stated, this state court action never belonged in federal court in the first place, and Westlake knew that but removed it anyway to avoid an adverse ruling on its motion to dismiss, in hopes that this court would be more sympathetic and grant the motion, which has done nothing more than impose additional costs on both parties, and waste scarce judicial resources, and assessing costs and fees in this case would reduce the attractiveness of removal as a tactic for delaying litigation and imposing unnecessary costs on the parties. The Court should therefore require payment of just costs and any actual expenses, including attorney fees in an amount deemed appropriate and necessary to deter future litigation conduct of this nature.

## **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that this Court will remand this case to the State Court and require the Defendant to pay just costs and any actual expenses, and attorney fees, incurred by the Plaintiff as a result of the improper removal.

Respectfully submitted,

March 27, 2023

*Joe Johnson*
Joe Johnson
Post Office Box 441572
Fort Washington, MD   20749